UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:                                                                    Chapter 13
                                                                          Case No.: 21-70139-reg

      DONNA MIRIAM HOPPER,

                Debtor.
-------------------------------------------------------------------X

## MEMORANDUM DECISION

This matter is before the Court pursuant to a motion ("Motion") filed by Donna Miriam

Hopper (the "Debtor") to strip off a junior mortgage lien on the Debtor's residence held by Real

Time Resolutions, Inc. ("Real Time"). Approximately twelve years ago, the Debtor filed a

petition for relief under chapter 7 and received a discharge of her debts, including Real Time's *in*

*personam* claim. However, because a chapter 7 debtor cannot modify the rights of secured

creditors, the mortgage liens on the Debtor's residence were unaffected.  The Debtor now seeks

to do what could not be accomplished in the chapter 7 case, which is to strip off Real Time's lien

by utilizing the provisions of chapter 13.  The Debtor requests that the order granting the Motion

include language reducing the remaining unsecured claim of Real Time to zero, which would go

beyond simply stripping off Real Time's mortgage lien. Were the Court to grant this request,

Real Time would be prevented from receiving any distributions under the Debtor's Chapter 13

plan, which currently proposes to pay unsecured creditors 100%. Simply put, the Debtor asks the

Court to enter an order that divests Real Time of any rights it may have under the mortgage lien

that survived the prior chapter 7 and simultaneously prevents Real Time from receiving any

compensation for the taking of its property under the Debtor's proposed plan.

The relevant Bankruptcy Code ("Code") provisions for a motion by a chapter 13 debtor to "strip off"[1] a wholly unsecured junior mortgage lien are §§ 506, 1322(b) and 1325(a). The Supreme Court in *Johnson v. Home State Bank*, 501 U.S. 78 (1991) held that a mortgage lien for which the debtor no longer has personal liability due to the chapter 7 discharge is still a "claim" as defined under the Code which may be treated in the debtor's subsequent chapter 13 case. While this Court has previously resolved similar motions where the debtor has obtained a discharge in a prior chapter 7 case, the Court has not specifically determined whether a wholly unsecured junior mortgage lien for which the debtor no longer has personal liability may be stripped off and then reduced to a value of zero in a subsequent chapter 13 bankruptcy.  The issue before the Court may be summarized by the following question: how should a wholly unsecured junior mortgage lien for which the debtor no longer has personal liability as the result of a chapter 7 discharge be treated after being stripped pursuant to §§ 506, 1322, and 1325 of the Code?

To determine the proper treatment of Real Time's claim, the Court must first consider the scope of the chapter 7 discharge. The discharge injunction bars Real Time from seeking repayment from the Debtor personally, thereby leaving Real Time solely with its *in rem* rights in the Debtor's current case.  Because there is no equity in the Debtor's residence to which the lien can attach, the Debtor may seek to strip the lien of Real Time. Stripping the lien of Real Time does not eliminate the debt but renders the claim of Real Time unsecured.  The Debtor also seeks to value the remaining unsecured claim at zero under the theory that the prior discharge renders

---

[1] The term "strip off" refers to the removal of a lien securing a claim if there is no value to secure any portion of the claim, while the term "strip down" refers to the removal of a lien that secures the unsecured portion of an under-secured claim.

the unsecured claim unenforceable against the Debtor.  The Court must resolve whether there is a legal basis to reduce Real Time's claim to zero under the facts of this case.

After a careful analysis of the relevant sections of the Code, the Court concludes that there is no legal justification for fixing the value of the claim at zero. After the discharge in the prior chapter 7 case, the secured claim of Real Time remained, but the process by which the claim could be enforced was limited to the rights granted under the mortgage instrument, which would include the right to commence a foreclosure action against the mortgaged property.  Real Time's claim, armed with the rights granted under the mortgage, became subject to the Bankruptcy Court's jurisdiction upon the Debtor's filing of this voluntary petition.  While the Debtor may utilize the provisions under chapter 13 to avoid the lien corresponding to the obligation, there is no Code provision that permits the Debtor to eliminate the claim entirely. Rather, pursuant to §§ 1322, 506 and 1325 the Debtor may modify the claim by stripping the lien, leaving an unsecured claim, which must be treated the same as any other unsecured claim in the Debtor's case. Therefore, for the reasons more fully set forth below, the Motion is granted in part and denied in part.

### *Facts*

The Debtor and her spouse jointly filed a chapter 13 petition on September 17, 2008 and the case was converted to chapter 7 on December 1, 2008.  The Debtor and her spouse received their discharge on April 16, 2009.  The Debtor individually filed the above captioned voluntary petition for relief under chapter 13 nearly twelve years later, on January 27, 2021 (the "Petition Date") and is therefore eligible to receive a discharge in the pending case.[2]  The Debtor's

---

[2] *See* 11 U.S.C. § 1328(f)(1) (A debtor is ineligible to receive a discharge if the debtor has received a discharge in a case filed under chapter 7 of the Code during the 4-year period preceding the date of the order for relief).

schedules disclose that she owns her residence located in East Rockaway, New York (the "Property") which is valued at $550,000 and is encumbered by two mortgages. The first mortgage is held by PHH Mortgage Corporation ("PHH") in the amount of $855,948.12, as reflected by PHH's proof of claim. The second mortgage is held by Real Time in the amount of $312,898.97 according to Real Time's proof of claim. Both mortgages were granted in May 2006, before the Debtor filed the first bankruptcy. As a result of the discharge previously granted to the Debtor, she is no longer personally liable to PHH and Real Time under the respective notes.

On April 14, 2021, the Debtor filed the Motion. ECF Dkt. 18. Attached as an exhibit to the Motion is a comparative market analysis conducted on January 26, 2021, which values the Property at $449,000. The Debtor alleges there is no equity in the Property to secure Real Time's mortgage and therefore this junior mortgage should be reclassified as unsecured pursuant to § 506(a)(1) of the Code. However, the Debtor also requests that the Court fix the value of the unsecured claim at $0.00 which will preclude Real Time from receiving any payment under the proposed chapter 13 plan.

Although no objections to the Motion were filed and a chapter 13 plan was prepared for confirmation, the Court determined that a hearing on the Motion was necessary. A hearing was held on June 3, 2021, during which the Debtor's argument was presented. There is no disagreement that the discharge in the prior case precludes Real Time from seeking to collect payment from the Debtor. However, Real Time's *in rem* lien survived the discharge and remains as a claim against the Property. It is also undisputed that under *Johnson v. Home State Bank*, Real Time's *in rem* lien is a claim that can be treated in a chapter 13 plan. It is presumed that in a subsequent chapter 13 case, the Debtor will have at her disposal all applicable Bankruptcy

Code provisions regarding modification and treatment of claims filed in this case. According to the Debtor, she is merely taking advantage of the ability to strip off the *in rem* lien held by Real Time, as set forth in § 1322 and recognized by the Second Circuit in *In re Pond*, 252 F.3d 122 (2d Cir. 2001). The Debtor has no personal liability to Real Time due to the prior discharge, and there is no legal basis to suggest that this *in personam* obligation is "restored" by the filing of the chapter 13 petition or by the stripping of Real Time's lien. ECF Dkt. 23, p. 5. Therefore, the Debtor argues that she is entitled to entry of an order that explicitly values Real Time's claim at zero to foreclose any requirement to treat the claim as a general unsecured claim in the Debtor's proposed plan. Michael Macco, Esq., the Chapter 13 Trustee (the "Trustee") informed the Court that so long as a proof of claim was filed by Real Time in this case and the proposed order granting the Motion did not contain any language to the contrary, the Trustee would treat Real Time's claim as unsecured. Therefore, Real Time's claim musts be afforded the same treatment as the other unsecured claims in the case. Barring an order of this Court specifically directing that the claim of Real Time be valued at $0.00, Real Time would be entitled to receive 100% of its claim along with all the other unsecured creditors.

The Court's previous decision in *In re Orkwis* does not directly address the issue currently before the Court.[3] Therefore, following the June 3rd hearing, the Court decided to take the matter under submission and requested that the Trustee file a letter with the Court clarifying the Trustee's position on the issues.[4] At the close of the June 17th hearing, the Court permitted the

---

[3] The Court in *In re Orkwis*, 457 B.R. 243 (Bankr. E.D.N.Y. 2011), determined that in a "chapter 20" case, a chapter 13 debtor's eligibility to receive a discharge was a requirement of lien stripping.

[4] In the letter, the Trustee summarized its position by stating the following:

parties to file supplemental briefs. On July 7, 2021, the Debtor filed a supplemental memorandum of law. ECF Dkt. 23. Thereafter the matter was marked submitted.

### *Discussion*

The specific facts of this case are unusual when taken as a whole.  First, the Debtor has received a discharge in a previous chapter 7 case, thereby precluding Real Time from seeking payment from the Debtor.  Second, the previous discharge was granted more than four years prior to the Petition Date, so the Debtor is entitled to take advantage of the lien stripping provisions afforded to chapter 13 debtors in this Court. Third, the Debtor has proposed a plan that pays unsecured creditors 100% of their claims.  If the Debtor had not previously received a discharge under chapter 7, it would be clear that stripping Real Time's lien would accomplish nothing because the Debtor proposes to pay unsecured claims 100% over the life of the plan. The added wrinkle in this case is that the Debtor seeks to have Real Time's *in rem* claim, which rode through unaffected in the prior chapter 7 case, reduced to $0.00 after stripping the lien.  As a result, Real Time would not participate in the plan at all and would receive nothing on account of the now "stripped" *in rem* claim despite all the other unsecured creditors receiving a 100% distribution.

---

In the event the hearing is simply a § 506 motion to vacate an uncollateralized mortgage and the Court Order simply states that Claim No. 4 is deemed unsecured, it is the position of the Trustee's Office that this office will pay all duly properly filed proofs of claim. In the event the Court determines that due to a prior filed Chapter 7 that this liability has already been discharged, then I would need a decretal paragraph in any Court Order that states that the claim is hereby deemed zero based on the prior discharge or specific decretal paragraph that no payment should be paid by the Trustee's office on Claim No. 4.

ECF Dkt. 20.

**A.  Lien Stripping in Chapter 13 Cases: Sections 1322(b) and 506**

As this Court has previously noted, §§ 506(a) and (d) do not work together to strip off liens, regardless of whether the debtor is in a chapter 7 or a chapter 13 case. *See In re Orkwis*, 457 B.R. 243, 247 (Bankr. E.D.N.Y. 2011); *In re Pomilio*, 425 B.R. 11, 16-18 (Bankr. E.D.N.Y. 2010). In short, § 506(a)[5] classifies creditors' allowed claims into secured and unsecured claims through the valuation of the collateral securing the claim. "The valuation does not in and of itself 'avoid' any liens." *In re Orkwis*, 457 B.R. at 245. Meanwhile, § 506(d)[6] simply reports as to whether a lien is "void," without actually avoiding the lien. *Orkwis*, 457 B.R. at 247. Whether a lien can be deemed void under § 506(d) turns on whether the underlying claim has been disallowed under § 502. *Talbert v. City Mortg. Servs. (In re Talbert)*, 344 F.3d 555, 561 (6th Cir. 2003); *In re Fenn*, 428 B.R. 494, 497-98 (Bankr. N.D. Ill. 2010) ("[T]he purpose of §506(d) is to void liens on disallowed claims."). Therefore, unless they are unenforceable under § 502, "underwater" junior mortgage liens pass through the chapter 7 process unaffected by the discharge. *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992).

A chapter 13 debtor has, in addition to the ability to object to claims under § 502, the right to seek modification of certain mortgage liens that are "underwater."  Such debtor may file a motion to strip off these mortgage liens pursuant to a § 1322 (b)(2), which permits

---

[5] Section 506(a) provides in part the following:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed distribution or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a).

[6] Section 506(d) provides in part that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." 11 U.S.C. § 506(d).

modification of the rights of certain creditors in the plan process. See 11 U.S.C. § 1322(b)(2) (allowing a debtor to modify "the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence"). While the Supreme Court in *In re Nobelman*, 508 U.S. 324 (1993), found that as long as the debtor's home mortgage is partially secured the debtor may not modify the rights of such claimholder, the Second Circuit Court of Appeals in *In re Pond*, 252 F.3d 122, held that a junior mortgage on the debtor's residence that is completely underwater is not classified by § 506(a) as a secured claim and therefore is not entitled to the protections of the anti-modification provisions of § 1322(b)(2). *In re Pond* does not directly address the proper treatment of a claim in a case such as this where the Debtor successfully strips the lien of Real Time under §§ 506 and 1322 and the *in personam* obligation was previously discharged. The Second Circuit's decision in *In re Pond* only concerned the right to modify wholly unsecured liens under §§ 506(a) and 1322(b)(2). There is no binding authority regarding whether Real Time's claim should be reduced to $0.00 as the Debtor urges, or whether the Debtor must treat the claim the same as the unsecured creditors holding allowed claims as the Trustee advocates.

### B. Treatment of Real Time's wholly unsecured junior mortgage under section 1322(b)(2)

Courts are divided regarding the appropriate treatment of junior mortgage liens that have been stripped off in a chapter 13 after the *in personam* obligations were discharged in a prior chapter 7 case. Some courts find that upon being stripped, the wholly unsecured junior mortgage lien must be treated the same as any other nonpriority unsecured claimholder. *See In re Miller*, 462 B.R. 421, 431 (Bankr. E.D.N.Y. 2011) (citing *In re Hill*, 440 B.R. 176, 182-83 (Bankr. S.D. Cal. 2010)); *In re Akram*, 259 B.R. 371 (Bankr. C.D. Cal. 2001); *In re Gounder*, 266 B.R. 876 (Bankr. E.D. Cal. 2001). In general, these courts rely on a straightforward interpretation of the

applicable Code provisions.  They start with the premise that the previous discharge, which eliminated the lienholder's ability to collect on the note by operation of § 524 of the Code, does not affect the junior mortgagee's *in rem* rights. *In re Gounder*, 266 B.R. at 880; *In re Akram*, 259 B.R. at 375.  Since the mortgage lien survives the discharge, stripping the lien in the chapter 13 case under § 1322 only entails valuing the secured claim at zero for purposes of the chapter 13, which renders the entire amount of the claim unsecured.   Because § 506(a) only speaks to how a secured claim is to be treated, stripping the lien does not eliminate the claim in its entirety.  *In re Hill*, 440 B.R. at 184; *In re Miller*, 462 B.R. at 430.   Lacking any basis to reduce the dollar amount of the claim under § 502, the claim becomes an unsecured claim that must be treated the same as the other unsecured claims in the case. *In re Hill*, 440 B.R. at 184; *In re Akram*, 259 B.R. at 378-79.

These courts also look to the Supreme Court's reasoning in *Dewsnup* and *Johnson v. Home State Bank* to support their conclusions. The *Dewsnup* decision provides that in chapter 7 cases, liens ride through bankruptcy unaffected.  *In re Akram*, 259 B.R. at 377. As a result, claims are not bifurcated in chapter 7 and "*there is no unsecured portion* of the secured claim owed any secured creditor."  *Id.* at 378 (emphasis in original).  After the discharge is granted in the chapter 7, the secured creditor can no longer take an act against the debtor to satisfy the obligations under the note. The debt still exists, but the mortgagee can only look to the mortgage instrument for its remedies.  However, under *Johnson*, the remaining mortgage lien is still a "claim" as defined by § 101(5) of the Code. *See, e.g.*, *In re Miller*, 462 B.R.  at 431; *In re Gounder*, 266 B.R. at 881.  Because it is a claim, the Code permits the debtor to seek relief under chapter 13 and include treatment of this claim in a plan.  *In re Hill*, 440 B.R. at 182.  While stripping the lien is permissible in the subsequent chapter 13 case, the dollar amount of the

"claim" is unaffected by the lien stripping or the prior discharge. *In re Miller*, 462 B.R. at 431 (citing *Johnson v. Home State Bank*, 501 U.S. 78).

Courts permitting debtors to reduce the *in rem* claim to zero after stripping the lien rely heavily on the injunction provision of § 524 of the Code to conclude that upon stripping the lien, the underlying debt is not an allowed unsecured claim in the chapter 13 case. While recognizing that the lienholder is left with an *in rem* claim after the chapter 7 discharge, these courts argue that because the lienholder may no longer pursue its *in personam* rights against the debtor, these rights cannot be "resurrected" once the *in rem* lien is stripped. *In re Rosa*, 521 B.R. 337, 339 (Bankr N.D. Cal. 2014). Furthermore, the remaining unsecured claim is not viewed as an allowed claim under § 502(b) given the "applicable law" of § 524, even though the discharge granted in § 524 only blocks any attempt by a creditor holding an *in personam* claim from seeking to recover from the debtor. The court in *In re Rosa* notes that the other approach fails to "cogently explain why, after eliminating their *in rem* rights through a motion to value, these lienholders held allowed, unsecured claims for discharged debts [in the chapter 13 case]." *In re Rosa*, 521 B.R. at 341.

The second approach also relies on the definition of "creditor" in § 101(10), which provides that a creditor is an entity that "has a claim against the debtor." According to these courts, this definition limits the universe of allowable unsecured claims to those with claims that have not been discharged. *In re Rosa*, 521 B.R. at 342. Lastly, these courts argue that their approach does not run afoul of *Johnson v. Home State* because the Supreme Court neither held nor suggested that the *in rem* claim that survived the chapter 7 discharge would be an allowed unsecured claim in the subsequent chapter 13 case after a § 506(a)(1) motion rendered the secured claim valueless. *In re Rosa* 521 B.R. at 339-40; *In re Washington,* 602 B.R. at 716.

*Analysis*

The latter approach, which the Debtor embraces, is built on several problematic assumptions.  First, this approach equates the discharge injunction with the elimination of the underlying debt.  As stated in *In re Washington*, the injunction terminates the debtor's *in personam* obligations, which includes the claim of the secured creditor that remains after stripping the lien.  602 B.R. at 715.  If this is taken to its logical conclusion, there is no basis to include Real Time's newly stripped claim with the other unsecured claims because the previous discharge eliminated the Debtor's *in personam* obligation owed to Real Time.  However, the discharge the Debtor received under § 524 prohibits acts "to collect. . .  any such debt as a personal liability of the debtor." 11 U.S.C. § 524. The claim of Real Time is not barred:  rather, Real Time is barred from collecting its claim against the Debtor personally.  The secured claim of Real Time that "rode through" the previous chapter 7 case is not a personal liability of the Debtor, nor does it become one upon stripping Real Time's lien.  It came into the chapter 13 case pursuant to the mortgage instrument and as a matter of non-bankruptcy law, it remains due and owing, but it is uncollectible against the Debtor personally. If the Debtor's case is dismissed, the secured claim of Real Time will be unaffected, and it will remain uncollectible against the Debtor personally.  The discharge previously granted to the Debtor does not affect Real Time's claim which emerged from the previous chapter 7 case, whether the lien is stripped or not.  It is the Debtor's decision to voluntarily seek relief under chapter 13 that brings Real Time before the Court.  Contrary to the court's analysis in *In re Rosa*, 521 B.R. at 340, the decision by Real Time to file a proof of claim in this case is not an act to collect a discharged debt and does not run afoul of § 524.

Second, as the Supreme Court in *Johnson* held, § 102(2) of the Code defines "claim against the debtor" to include claims against the property of the debtor. Furthermore, § 101(12), which defines "debt" as "liability on a claim," does not distinguish personal from *in rem* liability. Therefore, the argument that a claim surviving a previous discharge by virtue of its *in rem* nature cannot receive a *pro rata* share in the distribution because the personal liability was extinguished has no support in the Code. Real Time's claim that survived the chapter 7 discharge is more than just a lien.  As the Supreme Court in *Nobelman* discussed, a mortgagee receives a set of rights under a mortgage.  These rights are defined under applicable state law and can include "the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, [and] the right to accelerate the loan upon default and to proceed against [the debtor's] residence by foreclosure and public sale. …"  *In re Nobelman*, 508 U.S. at 329.  Stripping the lien from the claim does not eliminate the claim in its entirety.

Third, these courts overlook a critical section of the Code – § 522(c). The Code permits the Court to change the amount of a claim or disallow it in only certain circumstances[7]. Section 522(c) is an important provision because it instructs the Court when such unsecured claims become voided and prohibited from receiving any distribution under the plan.  In the seminal case of *Long v. Bullard*, 117 U.S. 617, 621 (1886),[8]  the Supreme Court held that a lien on property supporting a debtor's obligation to pay created by the note is not affected by the

---

[7] The Court's power to change an amount of a proof of claim is very limited. First, if a party objects to a claim, this court must determine the amount of the claim under § 502(b). Under § 502(c), the Court has the power to estimate only contingent or unliquidated claims, or any right to payment arising from a breach of performance. Under § 506(k)(1) Court is permitted to reduce claim based in whole on an unsecured consumer debt. Lastly, the Court may disallow the claim all together, but only if at least one of nine circumstances is present.

[8] "The setting apart of the homestead to the bankrupt under section 5045 of the Revised Statutes did not relieve the property from the operation of liens created by contract before the bankruptcy." *Long v. Bullard*, 117 U.S at 621.

debtor's discharge in bankruptcy. *Long v. Bullard*, 117 U.S. 617.  Section 522(c)(2) codified the

holding of *Long v. Bullard* by providing that the property remains liable during and after the case

for debt secured by a lien that is (i) not avoided under subsections (f) or (g), and (ii) not void

under § 506(d). 11 U.S.C. § 522(c)(2); *Johnson v. Home State Bank*, 501 U.S. at 83 ("Codifying

the rule of *Long v. Bullard*, . . . the Code provides that a creditor's right to foreclose on the

mortgage survives or passes through the bankruptcy."). Therefore, while § 524(a)(1) declares the

obligation uncollectible against the debtor personally, § 522(c)(2) shields the remaining *in rem*

lien, allowing it to pass through bankruptcy. *Johnson v. Home State Bank*, 501 U.S. at 297

("Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim – namely, an

action against the debtor *in personam* – while leaving intact another – namely, an action against

the debtor *in rem*.").

      According to § 522(c), the *in rem* lien securing the mortgage claim that survives

bankruptcy is protected to the extent that it is not void under § 506(d).  11 U.S.C. §

522(c)(2)(A)(ii). Section 506(d) states in part, "[t]o the extent that a lien secures a claim against

the debtor that is not an allowed secured claim, such lien is void." 11 U.S.C. § 506(d). As this

Court previously stated, "§506(d) does not provide a mechanism to 'disallow' a claim." *In re

Pomilio*, 425 B.R. at 16.  To the extent the Debtor relies on *In re Pond* to support her argument

that the voided lien results in a voided claim, the Debtor is mistaken.  The operative section

under which a court determines whether a claim is disallowed is § 502. *Dewsnup*, 502 U.S. at

417.  The Debtor has not made a motion to disallow Real Time's claim, nor has the Debtor

satisfied any requirement for its disallowance under §502.

      Section 502(b) lists nine provisions that set forth the sole grounds for disallowance.

Relevant to this discussion, § 502(b)(1) disallows a claim where the claim is unenforceable

against the debtor and property of the debtor, under any agreement or applicable law for a reason

other than because such claim is contingent or unmatured. The applicable law in the case at hand

would be New York's real property law, since, generally, applicable non-bankruptcy law

determines the validity of claims. *See Butner v. United States*, 440 U.S. 48, 54 (1979) ("Congress

has generally left the determination of property rights in the assets of a bankruptcy's estate to

state law.")  Under New York law, a junior mortgage lienholder has the right to foreclose on the

property upon a default in payment even if it will receive no proceeds from the sale. *See

Prudential Ins. Co. of America v. Land Estates*, 11 F. Supp. 544, 545 (S.D.N.Y. 1935) (Second

mortgagee's rights upon default include the right to commence a foreclosure action and to collect

rents).   Real Time's rights exist unless Real Time is paid in full on its claim.   As such, Real

Time's claim is fully enforceable and cannot be disallowed under § 502.

This statutory interpretation is consistent with the purpose of the Code and the rights

afforded creditors under the Constitution.  As the Supreme Court reiterated in *Dewsnup*, there is

a concern of reading bankruptcy statutes in a way that permit "involuntary reduction of the

amount of a creditor's lien for any reason other than payment on the debt." *Dewsnup*, 502 U.S. at

418-19. Although the Supreme Court in *Wright v. Vinton Branch of Mountain Trust Bank*, 300

U.S. 440 (1937) found that the amendments to the Frazier-Lemke Act[9] corrected the deficiencies

and that the rights given to the debtor under the act no longer amounted to an unconstitutional

taking of property under the Fifth Amendment, Congress's power to legislate on the subject of

bankruptcies is still subject to the limitations of the Fifth Amendment. Nothing in the law has

---

[9] The Frazier Lemke Act was found to be unconstitutional by the Supreme Court in *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935) because it essentially permitted a bankruptcy court to force a secured creditor to give up its lien without payment. The Act was later deemed constitutional following an amendment that preserved three rights of the creditor – the right to retain the lien until the indebtedness is paid; the right to realize on the security by public sale; and the right to bid at the sale. Some courts have noted the parallel between the amended Frazier-Lemke Act and section 1325 of the Code when discussing the constitutionality of the cramdown provisions of chapter 13. *See Magee v. Weller*, 2013 U.S. Dist. LEXIS 1367000, 2013 WL 5366092 (S.D. Ohio Sept. 24, 2013).

changed this core principle. *See Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 192 (1902) ("Congress may prescribe any regulations concerning discharge in bankruptcy that are not so grossly unreasonable as to be incompatible with fundamental law."); *In re Carroll*, 11 B.R. 45, 47 (Bankr. E.D.N.Y. 1981) ("Congress may not use the bankruptcy power to deprive a creditor of substantive rights in specific property acquired prior [to] the enactment of the Bankruptcy Reform Act of 1978 without providing the creditor with 'just compensation.'").

Allowing the Debtor to avoid all obligations under a mortgage because the lien was stripped would permit using the Code to deprive a creditor of substantive rights without providing the creditor with just compensation. The Court is mindful of the need to balance the debtor's right to a fresh start with the rights of creditors to receive repayment in a chapter 13 case. The Bankruptcy Code cannot be read in such a way as to deprive Real Time of its bargained-for rights while giving it nothing in return. Real Time did not come to this Court seeking enforcement of its rights; the Debtor has voluntarily sought relief under chapter 13 to avail herself of the applicable provisions of the Code. While the Debtor may modify the rights of Real Time by stripping its lien, the Debtor is required to treat Real Time the same as all unsecured creditors. Real Time and the Debtor's other unsecured creditors are entitled to payment consistent with § 1325(a)(4) (the best interest of creditors test) and § 1325(b) (the disposable income test), which could mean payment of a small percentage of their claims or payment in full. *In re Gounder*, 266 B.R. at 881.

### *Conclusion*

For the reasons set forth above, the Motion is granted with respect to the Debtor's request to strip off the lien of Real Time as wholly unsecured pursuant to Bankruptcy Code §§ 1322,

1325 and 506(a) and is denied with respect to the Debtor's request to reduce the claim of Real

Time to zero.  An order consistent with this Memorandum Decision shall be entered forthwith.



**Dated: Central Islip, New York**
**August 5, 2021**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**